# FRANK D. STOCKMAN, Respondent, v. ETHEL V. ALLEN et al., Appellants.

**Kansas City Court of Appeals, January 9, 1912.**

1. **PLEADING: Money Had and Received: Favor of Courts.** Money had and received is a form of action favored by the courts, and it will lie whenever one person has received money which, in justice, belongs to another and should be returned.

2. ————: ————: **When Maintainable: Breach of Contract: Evidence.** An action for money had and received may be maintained instead of breach of contract, where the contract is executed and one party is left in possession of the other's money. And it is proper in suitable cases to admit the contract in evidence.

3. ————: ————: **Rent: Cash and Share: Flood.** A contract of renting for five years provided for cash rent per annum in advance, but contained a further provision that if the crop of corn was injured by flood, the cash should be considered a payment of the *next* year's rent and a share of the crop should be rent for the flood year. The *last* year of the tenancy was a flood year and the tenant, who had paid cash before the flood came, offered the landlord a share of the crop, which was refused. *Held*, that as there was no "next year," of the tenancy, an action for money had and received would lie against the landlord for the money in his hands so paid in advance in the flood year.

4. ————: ————: ————: **Act of Parties: Construction.** That, although the contract of renting only stipulated for share of corn, yet as wheat was sown by consent in the fall preceding the flood year, it was a construction of the contract that "corn" included wheat.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*T. H. Harvey* and *D. D. Duggins* for appellants.

*R. B. Ruff*, *W. H. Meschede* and *A. F. Rector* for respondent.

ELLISON, J.—This is an action for money had and received, in which the plaintiff had judgment in the trial court.

The action grew out of certain facts connected with a contract for the lease of lands. On the 27th day of February, 1904, plaintiff rented of defendants for cultivation a tract of land in Saline county, which was liable to overflow, for a term of three years with the privilege of five, at an annual cash rent of $1200, payable in advance on the first of March of each year; but the payments were to be paid equally to defendants and two other parties, that is to say, $400 was to be paid to defendants and the same sum to each of two other parties. Payments were duly made, in advance, up to and including the last year. The contract contained the following provision: "In case of an overflow after corn is planted the said second party agrees to put all, or as much of said land back in corn as soon as practical and to pay to the said first named parties two-fifths of said crop, shucked and cribbed, and the said first-named parties agree to let the said $1200 paid in advance for that year, go for the next year's rent."

It so happened that in the spring or early summer of the last year a flood came and destroyed most of the corn planted and growing, as well as doing great injury to a field of winter wheat which had been sown the preceding fall. The ground was left in such condition that it was extremely difficult to cultivate what was left of the corn and the wheat was largely destroyed. However what there was left of the latter was harvested and two-fifths of one-third was stored for defendants and a like proportion of the corn when gathered later. Defendants refused to receive the rent in shares, thus set apart for them, and kept the cash rent which had been paid in advance.

Plaintiff, in reliance on the stipulation that if a flood came, his money payment in advance for that

year should become the payment for the next year, concluded he had a right to the land for the sixth year. and refused to surrender the premises. These defendants thereupon brought an action of unlawful detainer and procured a judgment ousting plaintiff, and this was affirmed, on appeal, in this court (144 Mo. App. 85), where we held, in an opinion by the presiding judge, that the stipulation providing that in case of a year of overflow the advance payment should be applied on the next year's rent, did not apply to the last or fifth year of the lease, since to allow that would be extending a lease limited to five years to a lease for six years.

Plaintiff then found himself in this situation: He had paid $1200 cash in advance for a flood year, when the contract was he was to pay share rent. He thereupon brought this action, counting upon money had and received, as stated at the outset.

Defendants insist that an action for money had and received does not lie; and that on the case made by plaintiff, the action should have been based on the contract. We think the action properly brought. Money had and received is a form of action commended by the courts. The Supreme Court said that: "An action for money had and received will lie whenever one person has received money which, in justice and right, should be returned;" and that the action had "always been one favored under the law and the tendency is to widen its scope, it being a flexible form of action, levying tribute on equitable, as well as strictly legal doctrines; so that, it has become axiomatic that the action lies where 'the defendant has received or obtained possession of the money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff.' " [Clifford Banking Co. v. Commission Co., 195 Mo. 262. 288.]

The St. Louis Court of Appeals, in Richardson v. Drug Co., 92 Mo. App. 515, said of such remedy, that:

"The simplicity of the action is indeed what commends it to the favor of the courts. A plaintiff is exonerated from the necessity of stating the special circumstances of his case and, therefore, from the danger of a nonsuit by a variance between his allegations and the proof; while as to the defendant: 'It is the most favorable way in which he can be sued; he can be liable no further than the money he has received, and against that may go into every equitable defense upon the general issue; he may claim every equitable allowance; he may prove a release without pleading it; in short he may defend himself by everything which shows that the plaintiff *ex aequo et bono* is not entitled to the whole of his demand.' [Moses v. Macferlan, 2 Burr. 1005.] Such was the encomium pronounced by Lord Mansfield more than a century ago."

The fact that there was a contract between the parties does not necessarily signify that an action must be brought upon it. If the contract has been performed, "put an end to, an action for money had and received lies to recover any payment that has been made under it." And, in proper instances, in such cases, the contract may be used in evidence. [Mansur v. Botts, 80 Mo. 651, 655; Stout v. Tribune Co., 52 Mo. 342; Fox v. Pullman Palace Car Co., 16 Mo. App. 122.]

In this case the contract had been "put an end to." Nothing remained to do under its provisions. It only figures now as a means of showing how defendants came to have plaintiff's money which they, in good conscience, ought not to keep.

The only difficulty we have found in disposing of the case arises from the fact that a part of the crop on the premises was wheat sown the fall preceding the flood year, and the contract above quoted mentions corn only, as being the subject of share rent if a flood should occur. Whether wheat was included in the word "corn" may well be doubted. Corn, in its gen-

eral sense, would include wheat, but the contract speaks of a grain which may be "shucked," and which may be replanted after a flood, and so, in the absence of action of the parties, we would have thought the word was used in the contract in its popular sense in this state. But as the wheat seems to have been permitted to be sown, without protest from defendants, it is not going too far to say that the actions of the parties put a construction on the contract which includes any grain growing on the premises which was destroyed or injured by the flood. At any rate, the sense of the agreement was to protect the tenant against a flood, that is to say, if a flood destroyed the crop, the rent was to be a share. The trouble with the contract, as applied to the facts, is that the wheat was sown and partly grown in a year in which cash rent was paid, and it was matured and harvested in a year in which share rent was to be paid. If it be said the rent was all due the year it was sown, then it was paid in cash. If the rent was not due until the harvest year, then a share of the crop paid it; and if the rent was to be partly paid in cash in the cash year and partly in a share in the flood year, then it has been paid. So, in whatever way it may be considered, the defendants, by including the share, either got what they were entitled to, or more.

But we need not indulge in speculation. The contract is plain as regards the present controversy. It in terms, provides that for a flood year money rent shall not be required and that money paid in advance for such year shall pay "the next year's rent." There being no "next year," as has been explained, it left defendants in possession of plaintiff's money.

As to the instructions, there is no substantial objection to them. The case was fairly tried and the verdict was for the right party. The judgment is affirmed. All concur.