## MARY P. WARE & another *vs.* SAMUEL HOBBS.

Suffolk.　November 9, 1915. — January 4, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Landlord and Tenant. Contract,* Construction. *Words,* "Just and proportional."

Under the ordinary provision in a lease that, if the buildings on the premises shall be damaged by fire so as to render them unfit for use and occupation, the rent "or a just and proportional part thereof" shall be abated, the "just and proportional" abatement of rent for an unexpired portion of the term, after a termination of the lease on the total destruction by fire of the buildings on the premises, is to be computed according to the portion of the period of legal possession of the premises that had expired when the buildings were destroyed without regard to the contemplated beneficial use of the premises by the lessee.

A lease of a summer hotel, which was unfitted for use during the winter months, at the rent of $2,400 a year, contained the usual provision that, if the buildings on the premises should be damaged by fire so as to render them unfit for use and occupation, "the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injury sustained, shall be abated until the said premises shall have been duly repaired and restored by the lessor," or, in case the buildings are destroyed the lessor at his election may terminate the lease. The rent was payable in instalments of $600 on the first days of December, June, July and August. In a year when the lease was in force the lessee paid on March 14 the $600 of rent which was due on the previous December 1 and on April 3 of that year the buildings on the premises were destroyed totally by fire. The lessor notified the lessee of his election to terminate the lease, and the lessee brought an action of contract to recover back the $600 of rent paid by him for the instalment of rent due December 1, contending that it was a payment in advance for the coming summer season which had not begun. The year under the lease began on November 2, so that the occupation for that year before the destruction of the buildings was during five months. *Held,* that the words "just and proportional," in the provision of the lease stated above, referred to the period of occupancy and not to the beneficial use of the premises by the tenant, and that the fact that the season when the hotel could be used had not begun when the $600 became due and was paid was immaterial, so that the defendant was entitled to judgment; it being *said* that the just and proportional part of the rent which the plaintiff owed at the time of the destruction of the buildings was at the rate of $200 a month, that is to say, $1,000 instead of the $600 that he had paid.

CROSBY, J. This is an action brought to recover a payment of $600 made on March 14, 1913, by the plaintiffs as lessees under a written lease from the defendant of "the Hotel Crowninshield

with Annex and maids' cottage and grounds at Clifton, in the Town of Marblehead, Massachusetts," together with certain personal property therein described. The term of the lease was for two years and ten months from the second day of January, 1911, at a rental of $2,200 for the first ten months and $2,400 for each of the two following years, called in the lease the "second" and "third" years. The lease provided that the rent for the third year should be paid in four instalments of $600 each on the following days respectively: December 1, 1912; June 1, 1913; July 1, 1913; and August 1, 1913; and at the rate of $2,400 per annum for such further time as the lessees occupied the premises after October 31, 1913. The instalment of rent due on December 1, 1912, was paid on March 14, 1913. The buildings on the premises were totally destroyed by fire on April 3, 1913; and on April 16, 1913, the lessor elected to terminate the lease and notified the plaintiffs to that effect.

There was evidence to show that the leased premises were used by the lessees as a summer hotel; that the hotel had no heating system therein, and that the buildings could not be used as a hotel during the winter months. The judge of the Superior Court,* before whom the case was tried, ordered a verdict for the defendant subject to the plaintiffs' exception, and reported the case with the stipulation that, if "upon the competent and admissible evidence, and upon the admitted facts . . . the plaintiffs had a right to go to the jury, then judgment is to be entered forthwith for the plaintiffs for six hundred dollars ($600) and interest from the date of the writ; otherwise judgment for the defendant is to be entered upon the verdict."

At common law a lessee of premises which are accidentally destroyed after the making of the lease cannot be relieved against an express covenant to pay rent in the absence of a stipulation to that effect. *Kramer* v. *Cook*, 7 Gray, 550. In some States this rule has been modified by statute so that the tenant is relieved from the payment of rent or is allowed a reduction thereof when the premises are accidentally destroyed without his fault. The lease in the case at bar contains the usual proviso that if the buildings on the premises or any part thereof shall be damaged by fire or

---

* *Fox,* J.

other unavoidable casualty so as to be unfit for use and occupation, then "the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injury sustained, shall be abated until the said premises shall have been duly repaired and restored by the lessor," or, in case the buildings are destroyed, then at his election the lessor may terminate the lease.

The question is: In what manner is "a just and proportional part" of the rent reserved to be. abated in accordance with this provision of the lease? The plaintiffs contend that the payment due December 1 and made on March 14 was so made before they had had any valuable use of the premises and was in effect a payment in advance of the summer season and before the hotel would yield any income to the lessees; and that the words "a just and proportional part thereof" do not refer to the portion of the term which had expired before the buildings were destroyed, but that in determining what is a just and proportional part of the rent to be abated the fact that the lessees could receive no income or benefit from the hotel except during the summer months is to be considered, and for that reason the payment of the rent due in December is to be treated in substance as an advance payment. It is settled that under such a provision in a lease a just and proportional part of a payment made in advance may be recovered back in case of the destruction of the premises during the term. In *Rich* v. *Smith*, 121 Mass. 328, the tenant, for three years in advance, had paid the rent for a building leased by him; the lease contained a provision similar to that in the case at bar; the building was destroyed by fire before the term had expired; and the lessor elected not to rebuild. It was held that the lessee was entitled to recover back a proportional part of the rent so paid in advance.

We are of opinion that the words "just and proportional" refer to the period of occupancy and not to the value of the use to the tenant, and that the rent to be abated is to be ascertained according to the portion of the period of possession which has expired; and the fact that the lessees could not have carried on the business of keeping a summer hotel when the December instalment of rent became due and was paid is an immaterial circumstance. The proper interpretation of the contract is that when the lessor exercises his election to terminate the lease, then

there is to be a just and proportional abatement of rent for the unexpired term because of the inability of the tenant longer to occupy the premises. See R. L. c. 129, §§ 8, 9; *Weston* v. *Weston,* 102 Mass. 514; *Faxon* v. *Jones,* 176 Mass. 138.

When the fire occurred on April 3, 1913, the first five months of the third year under the lease had expired, and when the instalment of rent of $600 due on December 1, 1912, was paid on March 14, 1913, the lessees had been in possession and occupancy of the premises under the third year of the lease from November 2, 1912, and continued in such possession until April 3, 1913, a period of five months, which, at a rental at the rate of $2,400 a year as provided by the terms of the lease, would equal $200 a month and would amount to $1,000 for the time actually occupied by them during the last year of the term.

In view of these facts it cannot be found that the rent paid on March 14, 1913, was paid in advance, but it is to be considered as having been paid under the terms of the lease on account of the occupancy of the premises from November 2, 1912, to the date of the fire. The rent under the lease was not made payable at regular intervals, but, with the exception of the December payment, became due on the first days of June, July and August. Still this circumstance cannot affect the interpretation which we have put upon the language of the lease. The dates fixed upon for the payment of the rent during the summer months apparently were for the convenience of the lessees who would be expected to have an income from the hotel business during those months.

In accordance with the terms of the report the entry must be

*Judgment for the defendant on the verdict.*

*W. D. Turner,* (*S. S. FitzGerald* with him,) for the plaintiffs.
*E. C. Gilman,* for the defendant.