## FRY v. SPENCER.
### No. 3672.

Court of Civil Appeals of Texas. Beaumont.
June 7, 1940.

Enoch G. Fletcher, of Grand Saline, and Pollard & Lawrence and William S. Reeves, all of Tyler, for appellant.

Gordon R. Wynne and Wynne & Wynne, all of Wills Point, for appellee.

COMBS, Justice.

This suit was brought by appellee, Spencer, as plaintiff, against appellant, Fry, as defendant, for breach of a written lease contract, by virtue of which the plaintiff leased to the defendant a picture show known as the Palace Theatre in the town of Grand Saline, Texas, for a term of ten years, beginning January 1, 1936, and ending December 31, 1945. The lease contract contained the following option: "It is hereby further agreed by all parties, that the second party is to have the option and privilege of cancelling this contract at the expiration of two years from January 1st, 1936, or any time thereafter upon the written notice served upon first party six months in advance and prior to the date of cancellation." After the expiration of the two years, the defendant gave notice and exercised his option of cancellation as provided in the above quoted stipulation. He refused to pay the monthly rentals for the last twenty weeks prior to the termination of the lease amounting to $500, contending that the payment made to the plaintiff at the time the contract was executed, should be applied to the payment of said rentals. The provision of the contract relied on by the defendant reads as follows: "Party of the second part (defendant Fry) has this day paid to the party of the first part (plaintiff Spencer) $1000.00 (one thousand dollars) cash which amount is hereby fully acknowledged by first party, said one thousand dollars to be applied on the rental for said equipment to include the first and last twenty weeks of this contract, as a further consideration second party agrees to pay first party a further rental of said equipment and premises the sum of twenty five dollars per week, payable weekly in advance to be deposited to the credit of W. H. Spencer, in the State Natl. Bank of Grand Saline, Texas, said twenty five dollar weekly payments to begin May 20th, 1936 and to continue to be paid as above set out the first of each week in advance each and every week until this contract is terminated." The plaintiff contended in the trial court, and contends here, that the payment of the $1,000 in accordance with the above quoted stipulation was advance rentals, and the stipulation that $500 thereof was for rentals for the "last twenty weeks of this contract" was intended to apply to the last twenty weeks of the ten year period, and that the defendant is not entitled to have it credited to the last twenty weeks of the shorter period resulting from

his exercise of the option to terminate the contract sooner. There were several other issues in the case, but all of them have gone out by jury finding or otherwise, except the question of law arising on the interpretation of the contract as to whether defendant is entitled to claim the benefit of the advance payment of $500 by having it credited to rentals. The trial court held that the defendant was not entitled to credit, and accordingly entered judgment in favor of plaintiff, and against the defendant, for $500 rentals, and also for an additional item of $300, of which no complaint is made here.

In contending that the defendant is not entitled to credit for the $500 advance payment, plaintiff relies chiefly on the case of Smith v. J. Weingarten, Inc., Tex.Civ.App., 120 S.W.2d 878, writ dismissed, wherein this court held that an advance payment of rentals could not be recovered back by the lessee upon termination of the lease by total destruction of the premises by fire. The holding of this court in the Weingarten case was based upon a construction of the contract therein involved. There the contingency of loss by fire was an event beyond the control of either party and obviously might result in the loss of rentals to the lessor for sometime. This court construed the contract for the payment of advance rent to imply an intent of the parties, that the risk from premature termination of the lease by fire should rest upon the lessee. In this connection, see note on that case in 17 Texas Law Review, page 500. This court thought and so held that the contract as a whole evidenced such intent when construed in the light of the common law rule applicable to such cases. But in the case before us we do not think that such intent should be read into the contract. Here we have a different contract—one which secured to the lessee an absolute option to terminate the lease after two years. There was nothing in the option agreement nor in the contract as a whole, stipulating, nor from which it can be reasonably inferred, that the $500 advance payment was to be forfeited to the lessor in the event the lessee should exercise the option. Yet, appellee's construction of the contract would impose that penalty upon the appellant. We think a more reasonable construction of the contract is that it evidenced an intention that the "last twenty weeks of this contract", to which the $500 was to apply as rentals, meant the last twenty weeks of the ten year term, or any shorter

term which might result from the lessee exercising his option. In other words, the ten year term mentioned was subject to being shortened at the election of the lessee. This stipulation for shortening the term of the lease was part of "this contract", and the parties must have so understood. Yet they did not specify forfeiture of the $500 as liquidated damages in the event lessee exercised the option. Instead a provision requiring the lessee to give six months notice of his intention to terminate the lease was incorporated. By that stipulation the lessor protected himself against loss of rental from termination of the lease. It would be unreasonable to read into the contract an intent to provide liquidated damages also.

The principle of common law applied by this court in the Weingarten case is rather severe, and should not be applied except where the contract clearly calls for its application. It is not our thought that it should be extended any farther than the application we gave it in that case.

The judgment of the trial court will be reformed by reducing the judgment of the trial court from the principal sum of $800 to $300, thereby allowing the appellant credit for his $500 advance payment. As so reformed, the judgment of the trial court is affirmed.

Reformed and affirmed.